**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT MAGRO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOUISVILLE LADDER, INC.,<br><br>Defendant. | Case No. 2:26-cv-5253<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ROBERT MAGRO ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Louisville Ladder, Inc. (hereinafter "Louisville Ladder" or "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Attic Stairway Ladders with gas struts throughout the United States (hereinafter the "Products").

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging, labeling, or marketing materials that the Products contain a severe defect wherein the bolts on the ladders can break while in use.

3. When the bolts break during use, it poses a severe risk of serious injury or death from a fall hazard.

4. Use of products with defective bolts may result in catastrophic injuries, and the Defendant has received at least 11 reports of bolts breaking, including at least one report of an injury to the neck, head, and back.[1]

5. The Recall includes[2] the following Century, Featherlite, Lite, and Louisville branded products:

**Century**

| Model No. | UPC Code |
|---|---|
| AC2240LG-R5 | 728865144584 |
| AC2540LG-R5 | 728865144591 |
| AC2540MG-R10 | 728865144577 |
| AL2211R5 | 728865142238 |
| AL2511R5 | 728865142221 |

| Model No. | UPC Code |
|---|---|
| ALE2211 | 728865142580 |
| ALE2511 | 728865142597 |
| ALE3010 | 728865144607 |
| ALE3011 | 728865144614 |
| FTAL2211 | 728865142504 |

**Featherlite**

| Model No. | UPC Code |
|---|---|
| AA2210R5FL | 772751221057 |
| AF2240LG-R5 | 728865145161 |
| AF2240MG-R5 | 728865144997 |
| AF2240MG-R5C | 728865144553 |

| Model No. | UPC Code |
|---|---|
| AF2540LG-R5 | 728865145178 |
| AF2540MG-R10 | 728865145154 |
| AF2540MG-R5 | 728865145000 |
| AF3040MG-R10 | 728865145604 |

**Lite**

| Model No. | UPC Code |
|---|---|
| AA2211 | 728865143990 |
| AA2511 | 728865144003 |
| AP2240MG | 728865144522 |
| AP2540MG | 728865144539 |

**Louisville**

| Model No. | UPC Code |
|---|---|
| AA2210 | 728865116260 |
| AA2210-2 | 728865133038 |
| AA2210-2R5 | 728865133052 |
| AA2210-500 | 728865141903 |
| AA2210F | 728865122445 |
| AA2210F-500 | 728865141927 |
| AA2210-H | 728865133731 |
| AA2210I | 728865142047 |
| AA2210R5 | 728865133533 |
| AA2510 | 728865116253 |
| AA2510-2 | 728865133021 |
| AA2510-2R5 | 728865133045 |
| AA2510-500 | 728865141910 |
| AA2510F | 728865122452 |
| AA2510F-500 | 728865141934 |
| AA2510-H | 728865133724 |
| AA2510I | 728865142054 |
| AA2510R5 | 728865133540 |
| AA2510TSWB | 728865137807 |
| AA2510TSWB-500 | 728865141941 |

| Model No. | UPC Code |
|---|---|
| AA2510WB | 728865140456 |
| AA2510WB-500 | 728865141958 |
| AA2810 | 728865128102 |
| AEE2210 | 728865122025 |
| AEE2210-500 | 728865141873 |
| AEE2510 | 728865122032 |
| AEE2510-500 | 728865141880 |
| AEE3010 | 728865132680 |
| AH2240LG-R5 | 728865144621 |
| AH2240MG-R5 | 728865144423 |
| AH2540MG-R5 | 728865144430 |
| AL2240LG-R5 | 728865144508 |
| AL2240LG-R5FT | 728865145086 |
| AL2240MG | 728865144461 |
| AL2240MG-C | 728865144546 |
| AL2240MG-FT | 728865145062 |
| AL2240MG-R5C | 728865144867 |
| AL2240MG-R5FT | 728865145413 |
| AL2540LG-R5 | 728865144515 |
| AL2540LG-R5FT | 728865145093 |

| Model No. | UPC Code |
|---|---|
| AL2540MG | 728865144478 |
| AL2540MG-FT | 728865145079 |
| AL2540MG-R10 | 728865144485 |
| AL2540MG-R10FT | 728865145109 |
| AL2540MG-R5FT | 728865145420 |
| AL3040MG-R10 | 728865144492 |
| AL3040MG-R10FT | 728865145116 |
| AL3040MG-R5FT | 728865145437 |
| FTAA2210 | 728865121196 |
| FTAA2210-500 | 728865141965 |
| FTAA2210F | 728865123961 |
| FTAA2210F-500 | 728865141972 |
| FTAA2510 | 728865121202 |
| FTAA2510-500 | 728865141989 |
| FTAA2510F | 728865123978 |
| FTAA2510F-500 | 728865141996 |
| FTAA2510TSWB | 728865139474 |
| FTAA2510TSWB-500 | 728865142009 |
| FTAA3010 | 728865138514 |

[1] https://www.cpsc.gov/Recalls/2026/Louisville-Ladder-Recalls-Over-One-Million-Attic-Stairway-Ladders-Due-to-Risk-of-Serious-Injury-or-Death-from-Fall-Hazard (last accessed Aug. 25, 2026)
[2] https://atticstairwayrecall.expertinquiry.com/ (last accessed Aug. 25, 2026)

6. Plaintiff and those similarly situated (hereinafter "Class Members") reasonably expect that the ladders they purchase will not contain, or risk containing, a defect that causes the ladder to fail and become a life-threatening fall hazard.

7. Consumers trust manufacturers and retailers like Defendant to sell products that are safe, appropriately tested, and manufactured in accordance with industry safety standards.

8. Unfortunately for consumers, including Plaintiff, the Products they purchased contained, or were at risk of containing, this dangerous defect.

9. Defendant utilized a marketing and advertising campaign that omitted from the packaging that the Products contained, or risked containing, a defect that could cause the ladder to collapse.

10. Knowing of the risk of ladder failure is highly material to reasonable consumers.

11. The presence of this defect was a material fact solely within the possession of Defendant, and consumers could not reasonably discover this defect prior to purchasing or using the Products.

12. Defendant's omission leads a reasonable consumer to believe they are not purchasing a defective product when, in fact, they are purchasing a product fraught with failure risk.

13. While Defendant issued a recall of the Products on August 6, 2026 (the "Recall"), this Recall has been woefully ineffective and insufficient to make consumers whole.

14. The Recall instructs consumers who purchased the Products to stop using them immediately and register online to receive a free repair kit containing replacement bolts, washers, and lock nuts.

15. However, the Recall is purposely designed to minimize Defendant's financial liability, as it shifts the burden of labor and repair onto the consumer and fails to offer a refund for the defective Products.

16. Because Defendant has failed to adequately compensate Plaintiff and Class Members, this class action remedy is superior to Defendant's failed recall in every conceivable fashion.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because at least one member of the Class is a citizen of a different state than at least one Defendant.

18. Further, this is a class action involving more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

19. This Court has personal jurisdiction over Defendant because Defendant is authorized to do business and conducts substantial business in the State of New York.

20. Defendant actively contracts to supply goods within the State of New York, supplies goods within the State of New York, and its products are sold at numerous retail locations within this District.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this District, Defendant transacts substantial business within this District, and a substantial part of the events or omissions giving rise to the Classes' claims occurred in this District, including Plaintiff's purchase of the Product.

## PARTIES

*Plaintiff*

22. Plaintiff Robert Magro is, and at all times relevant to this action was, a citizen and resident of West Islip, New York, which is located in Suffolk County.

23. Plaintiff Magro purchased the Defendant's Product, specifically the Louisville Ladder Attic Stairway Ladder with gas struts (Model AA2510I, manufactured 09/2022), in or around 2023.

24. Plaintiff Magro made this purchase in person at a Home Depot retail store located at 1881 Sunrise Hwy, Bay Shore, NY 11706.

25. Prior to purchasing the Product, Plaintiff saw and reviewed the packaging, labeling, and marketing of the Product.

26. Nowhere on the packaging or labeling did Defendant disclose that the Product contained, or risked containing, defective bolts that could cause the ladder to fail.

27. Had Defendant disclosed this material information, Plaintiff Magro would not have been willing to purchase the Product at any price.

28. Alternatively, Plaintiff Magro paid a price premium based on Defendant's false, misleading, and deceptive representations and omissions regarding the safety of the Products.

29. The Product Plaintiff received was defective because it carries a severe risk of mechanical failure resulting in a fall hazard.

30. Accordingly, Plaintiff was injured in fact and lost money as a direct and proximate result of Defendant's improper conduct.

*Defendant*

31. Defendant Louisville Ladder, Inc. is a corporate entity with its principal place of business located at 7765 National Turnpike, Unit 190, Louisville, Kentucky 40214.

32. Louisville Ladder is a manufacturer and distributor of climbing products, including attic stairway ladders.

33. Defendant manufactures, markets, advertises, distributes, and sells the Attic Stairway Ladders with gas struts.

34. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of its Products throughout the United States.

## FACTUAL BACKGROUND

35. The ladder industry is a competitive market where safety and structural integrity are paramount to purchasing decisions.

36. Consumers have become increasingly conscious and concerned about the safety of the products they use to access elevated areas of their homes.

37. Companies, such as Defendant, market their products as safe and capable of withstanding stated weight capacities (such as 375 LBS for Model AA2510I).

38. Consumers are willing to pay, and have paid, a premium for products that are represented to be safe and reliable.

39. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product's hardware, such as gas strut bolts, is defective at the point of sale.

40. Therefore, consumers must and do rely entirely on Defendant to truthfully and honestly market the safety of the Products.

41. The Products' packaging wholly fails to identify the risk of bolt failure.

42. Defendant is a massive and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing ladders for years.

43. Defendant possesses unique and superior knowledge regarding the manufacturing processes, the materials used, and the risks associated with those processes.

44. Such knowledge regarding hardware failures and safety risks is solely within the possession of Defendant.

45. Defendant had a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the structural integrity and safety of the Products.

46. Instead of ensuring consumer safety, Defendant released defective Products into the consumer market.

47. On August 6, 2026, Defendant, in conjunction with the Consumer Product Safety Commission, issued a recall of roughly 1.77 million of its Attic Stairway Ladders with gas struts due to the fall hazard.[3]

48. The Recall covered products sold as far back as November 2012 through July 2026, meaning defective products were in the market and being actively used by consumers for over a decade before any warning was issued.

49. Consumers were instructed by Defendant to immediately stop using the recalled ladders.

50. This instruction concedes that the ladders are unreasonably dangerous, unsafe, and unsuitable for their principal and intended purpose.

51. The Recall provides that consumers should register for a free repair kit to replace the hardware themselves.

[3] *See* fn 1.

52. By requiring consumers to perform their own repairs rather than issuing full refunds or replacements, Defendant designed a recall program that structurally minimizes its own financial liability.

53. Reasonable consumers reviewing Defendant's labels reasonably believe that they are purchasing products that are safe for use.

54. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members.

55. Plaintiff and the Class Members were deprived of the benefit of their bargain, as the Products they purchased were defective and dangerous.

## CLASS ALLEGATIONS

56. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

57. As detailed in this Complaint, Defendant orchestrated deceptive marketing, labeling, and manufacturing practices that uniformly impacted its customers.

58. The proposed Class is defined as follows:

> Nationwide Class: All persons within the United States who purchased Defendant's affected Products.
>
> New York Subclass: All persons who purchased Defendant's affected Products within the State of New York.

59. Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, and assigns.

60. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

61. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Over 1.77 million units were sold. Plaintiff believes that there are hundreds of thousands of consumers who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

62. *Commonality*: Questions of law and fact common to the Class Members predominate over any questions affecting only individual Class Members.

63. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class Members were injured and suffered damages in substantially the same manner as Plaintiff, Class Members have the same claims against Defendant relating to the same course of conduct, and Class Members are entitled to relief under the same legal theories asserted by Plaintiff.

64. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

65. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

66. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would

proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

67. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of New York General Business Law § 349
### (On behalf of Plaintiff and the New York Subclass)

68. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

69. New York General Business Law ("GBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in the State of New York.

70. Defendant engaged in deceptive and unfair business practices by representing that its Products were safe, high-quality ladders, while omitting the material fact that the Products contained, or risked containing, defective gas strut bolts prone to breaking.

71. Defendant intended that Plaintiff and the New York Subclass rely on its deceptive packaging and material omissions so they would purchase the Products.

72. The omissions regarding the hardware failure risk were material to Plaintiff and the New York Subclass because reasonable consumers care deeply about the safety of products used for climbing.

73. Defendant's deceptive and unfair practices occurred in the course of conduct involving trade or commerce in New York.

74. As a direct and proximate result of Defendant's violation of GBL § 349, Plaintiff and the New York Subclass suffered actual damages in the form of monies paid for defective, dangerous products.

75. Plaintiff and the New York Subclass are entitled to monetary damages, statutory damages, punitive damages, and attorneys' fees and costs under GBL § 349.

## SECOND CAUSE OF ACTION
## Negligence
## (On Behalf of Plaintiff and the Nationwide Class)

76. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

77. Defendant owed a duty to Plaintiff and the Nationwide Class to exercise reasonable care in the design, manufacturing, quality control, distribution, and sale of the Products.

78. Defendant breached this duty by failing to adhere to proper manufacturing standards and failing to adequately test hardware components for structural integrity.

79. Defendant further breached its duty of care by negligently failing to timely or adequately warn Plaintiff and the Class of the bolt defect after Defendant knew, or should have known, of the defect.

80. As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class Members suffered economic injuries by paying for defective products they otherwise would not have purchased.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

81. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

82. Plaintiff pleads this claim in the alternative.

83. Defendant was unjustly enriched at the expense of Plaintiff and other Class Members through the payment of the purchase price for the Products.

84. Defendant received a measurable benefit from Plaintiff and the Class Members, which Defendant retained despite the Products being defective and dangerous.

85. It would be inequitable and unjust for Defendant to retain these ill-gotten profits under the circumstances.

86. Plaintiff and Class Members seek restitution, disgorgement of inequitably obtained monies, and the imposition of a constructive trust upon Defendant's unjust profits.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On behalf of Plaintiff and the Nationwide Class)**

87. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

88. Defendant, as the designer, manufacturer, marketer, and seller, expressly warranted on the Products' packaging that the Products were safe and capable of withstanding stated weight capacities.

89. These express representations became part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

90. Defendant breached these express warranties because the Products were manufactured with defective bolts, making them entirely unfit and unsafe for their intended purpose.

91. The August 2026 recall acts as an admission by Defendant that the Products do not conform to the express warranties made on the labels.

92. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class Members suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the following relief is requested:

- An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23.
- An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.
- An order enjoining Defendant's unlawful conduct.
- An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.
- An award of interest as provided by law, including pre-judgment and post-judgment interest.
- Such other and further relief as this Court may deem just, equitable, or proper.

Dated: August 26, 2026
Mineola, New York

**LEEDS BROWN LAW, P.C.**

*/S/ Brett R. Cohen*
Brett R. Cohen, Esq.
Jeffrey K. Brown, Esq.
134 Mineola Blvd – 2nd Floor
Mineola, NY 11501
bcohen@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
Tel: (516) 873-9550
*Counsel for Plaintiff and Proposed Class*